May it please the Court. The Circuit Courts uniformly hold that fair market value is the best measure of restitution under the MVRA, unless the item in question is either unique or is unavailable in the open market. But the District Court didn't apply that rule here. It believed that fair market value was not relevant at all in any case where the victim provided a report of their own replacement costs. It applied that rule here even though the company provided no documentation to back up its reported costs, and even though those reported costs exceeded fair market value by a factor of nearly 3 to 1. Because the District Court applied the wrong legal standard, this Court must vacate the restitution order and remand for further proceedings. I want to address three points with the Court today. The first is that the District Court did, in fact, apply the wrong... I think it's unanimous among the Circuit Courts that there are circumstances where replacement value is the proper measure. Absolutely, and that's what I said. They uniformly hold that fair market value is the best, unless one of two preconditions is satisfied. The first being that the item is unique. It has some kind of intangible value to its owner. Certainly that's not the case here. These video games don't have intangible value to their corporate owner. And the second precondition is that there is no market for the item. There's no active open market where the item can be procured, and that also is not true in this case. The record evidence is very clear that there is an active market for used video games. We submitted evidence to establish that. If we agreed with you, we would still have to remand for determination of what the market value is, would we not? That's exactly right, Your Honor. And we would ask that the Court give the instruction specifically that the Court calculate restitution based on the fair market value because the evidence is clear that the two preconditions to using an alternative measure are not satisfied in this case. That being, again, these video games aren't unique. They don't have intangible value to their corporate owner, and there is an active market for video games. And so we would ask for that specific instruction. When you say an active market, how do we define the market? Is it a market for video games, for used video games, for a certain type of video games? I mean, what is the market? Sure. I don't think you have to drill down too far into the specifics here because there's really – I think I would define it as used video games because that is the item in question, and there is really no dispute that used video games are available in the open market. Your client showed us there's a market for used video games. He did. And that's why, I mean, the exhibit we submitted at sentencing was from the government's own discovery, saying when these exact items that were stolen were taken out and sold onto the open market, this is the value that the market determined they had. Therefore, that is the value of them, and that is the measure that should be used for calculating restitution. That's all we're asking for in this case. It's not complicated. What kind of evidence do you anticipate putting on with respect to the fair market value? Your Honor, we've already put on evidence as to fair market value, and it came from two sources. The first is the record of these transactions involving these exact video games, and the second is from the website pricecharting.com, which tracks used video game sales and is, again, very clear evidence that there is a booming market for these games. If you have a used video game, you can sell it online in a matter of minutes. And so that evidence is what we believe is fair market value, and I would add that it's the government's burden, actually, to put on the evidence of fair market value, not ours. The government has the burden. The other cases are clear. The government has to either establish fair market value or establish that an alternative measure is appropriate, and we believe it can do that in this case. I point the Court to three particular places in the record just to illustrate that the District Court did apply the wrong standard. The first two are at Joint Appendix page 76 and page 69. We cited those to the Court in our briefs, and I think they do make clear that the Court believed that replacement cost was controlling without regard to fair market value. The third item is one that I didn't cite in the briefs, and so I want to highlight it for the Court, but it reiterates the same point, which is that Joint Appendix... Even if you determine that replacement cost is the proper method, there's still a question of how do you determine the replacement cost? I agree with that, exactly. I don't think this Court needs to get there because in the circumstance of this case, we think the fair market value is right. Even if you were to think that the District Court was correct, that replacement cost could be right, though, we think the finding here was erroneous because there's no evidence to figure out whether this $40 estimate is based on wholesale costs, retail costs, and so it's impossible to calculate replacement costs even on this record. If the concept under the mandatory restitution statute is to put the victim back in a place they would have been but for the theft in this case, then it would seem like there would have to be evidence in the District Court as to the means by which, in this case, a commercial victim goes about purchasing its inventory because that would be its replacement cost. Otherwise, it would seem like under your theory you'd be required to go into the marketplace and shop online or all these other video stores to replace thousands of videos. First, I agree that in terms of establishing replacement costs, if that were the correct measure, that would be what's required. Sales receipts, how exactly the company obtains these gains. Two points about that. I thought that was in the record. That is not in the record, no. There are no sales receipts. If you look at Joint Dependents page 207-209, the company's sworn statement, at 208 it says, explain your costs and attach proper substantiation records. They attached no records, no sales receipts, no anything to back up. All they said was average of $40 a game. Was there a list of all the games that were stolen? The agent testified there was such a list but that the company didn't provide it and didn't provide a game-by-game valuation, which they could have done. But a couple of things in response to your question. First is it would actually be quite simple for the company to replace the thousands of stolen video games here on the open market. If you log on or have your clerks log on to the GameStop website this morning and click on the pre-owned tab and click on games, you'll find that there are over 5,000 games that are available for immediate distribution. I've seen you direct clerks to do it. I've been in their situation, and Judge Michael was not very good with the Internet, so I did a lot of that research for him. Very last choice. I think that establishes these games are easily available in the open market. The company could have chosen to replace them that way. I think that illustrates why fair market value rather than replacement cost is the right measure here because a company can choose how to replace a stolen item. If we allow that choice to dictate the amount of restitution, it's going to generate a windfall to the company. I would point the court to the used car hypothetical that I included in the reply brief as an example of that. If there's a stolen car that has 100,000 miles on it, it might make sense for a business to choose to replace that car with a newer version with only 25,000 miles on it. But if we allow that choice, a reasonable business choice, I'll grant that, but if we allow that choice to dictate the amount of restitution that's paid back in a case, we generate a windfall to the company. We put it in a better position than it was in before the offense. Couldn't the court put the brakes on that kind of replacement? As a factual matter, you're going to have a gold-plated replacement. Couldn't the court say, no, it's a gold-plated replacement. You're going to have to stick with silver or bronze? That's exactly right, and that's why we think fair market value is the way you do that. But the analogy is very strong because that's what's happening here. There are 1,000 or 1,300 used video games that are removed from the company's inventory, and they're seeking to replace them with the cost of new video games. So the analogy is really very similar, and you can see the difference. We'll come back to our case in Stone. Didn't that proceed with the assumption that the basic measure was one of fair market value? I agree. That was sort of the default position, and that was the basic presumption. As long as there was a reasonably – as long as there was a way of reasonably ascertaining fair market value, that's what we should do. That's exactly right, and we're just asking the court to apply that rule here. So it seems to me, you know, somewhat to follow along with what we said in Stone. And I worry about if we adopt replacement value, there's not only the windfall problem, but I worry that we're going to be creating some sort of riptide in the law here, and we're concerned about confusion these days in criminal law. That's right, and I think the other thing it does is it creates incentives for these companies to inflate their costs. I mean, if you're going to get the replacement value, why not buy the brand-new car? You know, why not replace the lost Timex with a brand-new Rolex? They're both watches. And so it creates incentives for companies to abuse the restitution system. And I think the same thing happens where the district court here accepted the company's self-reported costs without any backup documentation. That creates an incentive, again, for the companies to inflate their values. I would request the district court for the list that apparently was given to the agent of the titles of all the missing games that were stolen. And for, it seems like to me in today's world, it would be relatively simple to produce not only a list of the titles, but the inventory costs. It would, and, Your Honor, if you look at the early part of the sentencing transcript there, there is reference to e-mail exchanges. The e-mail exchanges themselves aren't in the record, but they're referenced in the sentencing transcripts. The e-mail exchanges between trial counsel seeking to get exactly those records and the AUSA stated that they didn't have them, and I guess they chose not to request them from the company. So I agree. We think that the government had the burden here and should have done all of those things to establish the fair market value. But with respect to the instructions, we would, as I mentioned earlier, ask the court to specifically instruct that restitution on remand be calculated based on fair market value because the preconditions to using an alternative measure aren't present here. We'd also ask the court to limit the government to the evidence it put forward in the district court under this court's decision in Parker. We think that establishes that the government shouldn't have a second bite of the apple to go out and get additional evidence. I actually don't think that would much matter at the end of the day in this particular case. But I do think it creates a bad incentive if we allow the government to come in and kind of ignore the governing rules, not put on any evidence, and then get a second bite at it a second time around. I think that's a bad incentive from an institutional standpoint. And the third thing we would ask the court to specifically include in its instructions is a reminder for the district court to ensure that it takes into account all of the video games that were recovered, regardless of whether they were ultimately returned to the company, as we highlighted. The agent testified that 300- assuming they were recovered in somewhat the same condition that they were in when the loss was incurred. I don't think there's a dispute on that, Your Honor. The preferred remedy under 3663A is, in fact, the return of the items if that is possible. And that's the Fonseca case. I would be surprised if the cost of recovered goods didn't subtract from the overall restitution. Yeah, and it's explicit in the statute, Your Honor. And I think the Fonseca case applies that principle as well and says, you know, the government has a duty to return these items to their rightful owners unless they're subject to forfeiture. It seems like there's discrepancy in the government's evidence as to how many of these games were returned. There's a certain number that the victim says they were returned, and then there's testimony from the government agent that there was a larger number that were recovered. There's no explanation, and I'm aware of the record as to why is there this discrepancy. That's exactly right. There is, you know, no explanation. And that leaves us in the same point and in the same posture as the Fonseca case from the Eighth Circuit, where it was dealing with firearms, but there was, again, a discrepancy between the number that had been seized and the number that had been returned. So we, again, would ask the court to instruct that the district court take that into account in structuring its restitution award. If there are no further questions, I'll reserve the remainder of my time. Thank you, Mr. Cobb. Ms. Ray? May it please the court. Ms. Ray, let me ask you. You and Mr. Cobb, you always do a fine job when you come here. There is no exception. You have your job to do, but don't we have to send this case back in light of the presumption that you look at, you know, the fair market value, unless there's something in the record. When you have a district court who says, to answer to Ms. Taylor's statement, these games are used. The vast majority of these games are used in court. Right. But that's, once again, not the issue. The issue is how much did the victim get victimized, and they have to deal with replacement costs. They don't deal with, you know, fair market value. Their actual replacement cost is their victimization. That's not, there's nothing in the record that says that we don't even know that they submitted just a victim home to fill it out. It didn't say anything that they don't deal with knowing about replacement. Don't have to, just get along. The court just didn't have the kind of evidence to make that kind of statement and categorically just sort of took out replacement and said, no, took out fair market value. Replacement is the only thing we can do here based on a record that, by any stretch, can't support that, can it? I think it can, but I want to make one thing really clear, which is that entire colloquy involved the loss calculation. The loss calculation under 2B1.1, and it requires a reasonable estimate. And under 2B1.1, as long as there's evidence of the actual cost or the actual victimization, the court doesn't look at fair market value. That whole discussion, the defendant never presented any argument to this district court relying on any of the cases that he presents on appeal. So the district court did not have before it sort of an argument that the fair market value in the restitution context citing cases, the cases that he cites here. And the only reason I make that, I didn't, we didn't present a plain... They are separate, Your Honor. They were not, so here's how it happened. In the district court, the defense attorney, Ms. Taylor, stood up and said, here's my loss argument, which I guess applies to restitution. But none of these cases were presented to the district court. And what the district court had before it was evidence of actual loss, which is the ultimate goal and purpose of the MVRA. Now, if this court were to choose to remand, deciding that... The evidence of actual loss was an unsubstantiated estimate of the victim. That's right, well, yes, unsubstantiated. I mean, this is a restitution calculation. It is not unusual for a court to decide to look at, and it's a very, it's a clear error standard of review in terms of the calculation of actual loss. Did the court clearly err by crediting the victim's own assessment and statement of its actual loss? The court doesn't always require records. That's not what the district court ordinarily does in restitution cases. It could have. It was an average of $40 per game, which the victim said was the average cost of replace. There's no question that it was a replacement cost. The government doesn't contend that it was anything else. But I would just note, in terms of understanding the context of this case and what it should look like if this court does choose to remand, that this district court was never presented with the argument, was never asked to, in the context of restitution, to determine whether or not, what the value, the fair market value of these disks is. You say it's a clearly erroneous standard of review, but if the district court applied an incorrect standard, that's a question of law. And wouldn't we, if it's a question of law, wouldn't we have to go against what was, it may not have been explicit in Stone, but it certainly was implicit that the fair market value was probably a good starting point. And then there's the Frazier case in the Eighth Circuit, and I don't know how many others, but wouldn't we have to go against a good bit of case law if we said that replacement value is the measure? Even if there's a market for the goods, the fair market value can be determined, and even if there's a danger by using replacement value, that there's going to be the gold-plated replacement, and that the system is going to be game in a way that someone might say, oh, here's my chance to get a brand new inventory, when that wasn't what you had, and that wasn't what was taken from you. And so there are some problems with just saying replacement value is the standard. Isn't there practically problems, problems with out-of-circuit precedent, and problems with Stone, which isn't on, it may not have held out, but it certainly implied correctly. So if I could, Your Honor, I want to respond first to the standard of review question, and I'd refer the court to the Eleventh Circuit's decision in Shugart, which says it's actually a discretionary call as to whether to apply fair market value or replacement costs. That is not actually a decision of law, it's a question of discretion. Which better makes the victim whole? That's the question. I would submit that the district court in this case was never really presented with the argument that in the context of restitution, you need to decide between these two things, because the whole conversation was about loss, and we know that in loss calculation, all that's required is a reasonable estimate. It's different from restitution. So I do agree that it would be inappropriate for a court to simply say that it was always replacement costs. I note, however, that in Shugart, for example, in the Eleventh Circuit, and in Kaplan, the Ninth Circuit's case, in Kaplan, it was home appliances, and the court applied a replacement cost and upheld that. There's nothing particularly unique or precious about home appliances. And they did the same thing with furniture in the Eighth Circuit's case. I can't recall, but anyway. No, it was the Third Circuit's case, I think at Simmons. Point being that, yes, fair market value should be considered, and in this case, the district court didn't have before it particular arguments. So if this court chooses to remand, I disagree with the defendant that the government should be limited to the evidence that we presented in the district court, because this issue was never fleshed out in the district court. Now, we have a video game operator. This is a rental company. This is not a company that sells video games. It is like Netflix. As soon as that customer doesn't have the game, that company better get it the game. The defendant makes a lot of assumptions in its brief about the fact that they have this whole inventory that they can just shoot out the next one. Anyone who's ever bought anything from Netflix or rented something knows that sometimes you have to wait in the queue for months. So there's no evidence on this record that this company could actually wait and find a used video game of the same approximate age and condition that would be required for a company that deals in this kind of volume of rentals. So at a minimum, if this court remands, the game company should be allowed to present the specific documentation, because this issue really wasn't fleshed out. The defendant makes a lot of assumptions in its brief. I think that they could present that, but I also think they could present testimony about how important it was to the company to get those video games to the customer right away, and whether or not they had the inventory at the time of the loss to simply ship out another disc, or whether they actually had to go out and buy a new disc right away. We're talking about almost 1,400 video games, and the defendant is now testifying, I guess, before this court that you can go to GameStop and get all these games. We don't know how many of the number one game that was wanted at that time was lost. And I think, honestly, I looked at this case and I considered whether we should concede, and I decided that we shouldn't. We decided as a government, because I think that the victim said, this is our loss, and the MVRA is about making the victim whole. And I think the district court could properly, in an exercise of discretion, credit that, and it's not a clearly erroneous decision. But if this court sends it back, let's let the district court receive the evidence from GameStop that GameStop's able to provide about what its loss and victimization was. It should not be limited to evidence that the United States presented really in the context of an argument about loss under 2B1.1, and not in the context of restitution. In terms of the number of video games that were returned, I just want to note one thing in the record. The agent said he believed it was 341 discs that they recovered. But he seemed uncertain, and if the court were to refer to paragraph 13 of the pre-sentence report, we find that that number, 341, refers to the number of games that this gentleman was able to sell or trade. They found evidence that he sold or traded 341 games. I think it's likely that Agent Cavaniss on the stand mixed that up in terms of the number of discs they recovered and the number of discs that this gentleman was able to sell or trade. He is, but he said, I believe. I mean, honestly, Judge Gregory... Well... No, what I'm saying, Your Honor, is that the district court could properly decide, and it's a question of whether the district court could properly say, oh, well, you know, this isn't 341. But to be clear, this is on plain error review because the defendant never made that argument. The defendant never made the argument about the replacement. I'm sorry, Judge Adrian. I thought there was a... that the court erupted in the number of 100 discs. That came from the victim's own statement that it lost, that 1,390 games were stolen and that 100 were returned. So that comes from that same statement that it provided, that Gamefly provided to the probation office, and I think the district court could properly rely on that statement. There's nothing improper about a district court crediting a victim's own assessment or assertion of how many games it returned. That issue is on plain error review. The defendant cannot show that that affected his substantial rights because he cannot show affirmatively approved that he... that Gamefly received more than 100 back. If this court decides to remand, I don't think that that issue is one that the district court should have to, but if this district court wants to look at it, then that'll be an opportunity for the district court to make that... If we remand, both you and Mr. Carpenter want a detailed set of instructions on remand, sometimes contradictory instructions like recruitment and all the rest. Why do we need to be that detailed about it? I mean, to me, the basic question is whether replacement value is really the proper standard in situations where there's an ascertainable market value, and why wouldn't it be sufficient under the day? Why wouldn't we just let the district court go about it without trying to prescribe a detailed set of instructions for remand? Your Honor, I'm actually trying to resist Mr. Carpenter's assertion that it has to be specific. You're only limited to the evidence that was presented to the district court. But I also don't think that it is appropriate for this court to direct the court to apply replacement value without hearing from Gamefly about whether or not fair market value could actually satisfy or make it whole. This is just not a question that was presented to the district court. The district court was never asked to decide what would make Gamefly whole and to flesh that out. It was all in the context of loss. Just surveying the precedent across the country, isn't there a strong propensity for fair market value? Your Honor, yes and no. I mean, it is the default. So the statute doesn't say how it should be valued. It just says when and what to value. And then courts have said, first of all, the overriding principle is actual victimization. So we want to make the victim whole. That's number one. How do we do that? Consensus is, presumption is fair market value unless it is too hard to determine what fair market value is, which could be the case in this case. If we have disks and we're not sure how old they were and how used, they could have been practically new. So it could be that it's too difficult or it could be that that simply isn't an adequate measure for the harm that this victim suffered. And so I agree that it's entirely appropriate. The general rule here, we don't contest, which is as a general rule. But the court has discretion to apply replacement costs if fair market value does not adequately compensate the victim for the harm. And the assumption... Why wouldn't that in most cases adequately, why wouldn't fair market value in most cases adequately compensate someone for the harm? Because that's what they could get. Sure. That's what they could get on the open market. That's what these were worth. And you posit the situation of, well, how long would it take to put in place a replacement inventory and that sort of thing. But on the other hand, counterbalancing that out, if you get restitution for the fair market value of something, you're getting restitution for things that have never been sold. So in that sense, it's the windfall for the... It benefits... The fair market value benefits the victim because it presumes that the items would have been sold at fair market value. And that's not at all always the case. So in other words, I can see that there are costs in replacing the inventory. But I can see, on the other hand, that there are advantages in presuming the sale of something that's not been sold. And the whole point is to let the district court make that determination based on the facts of this case. GameFly didn't just lose those games. GameFly lost... If a customer orders a disc and it doesn't arrive, that is also the company's reputation. That business depends upon the immediate... These are people who want those games and want them now. And so it's not just the loss of the games. And all I'm suggesting is, yes, fair market value is ordinarily the best measure. We don't dispute that. I agree. And it may be that if this court remands, which we don't think is necessary, but if this court remands, the district court might agree. But I do not believe that this court should instruct the district court to apply... They did in the actual victim's statement to the probation office. It says, we lost not only the games, we lost goodwill of our customers as well as the mailing costs. Are you suggesting that they could be compensated for not only goodwill but profit too? No. But isn't that a function of profit? I know exactly what you're saying. It's like a used car, a rental car. Every day that car is not available to be rented is lost profit. You're making a lost profit argument. I'm saying the victim here asserted that it lost that but didn't request any compensation for that. Are you suggesting that that should be a calculus? I think it should be a calculus in determining whether or not fair market value can adequately compensate the victim for the harm it suffered. It can be a factor in determining whether replacement cost is necessary or fair market value. Because if you can't... That would be only the case if you could show that you could buy them new in one day and it would take you 10 days to buy them new. Precisely. And we don't have that evidence here. And so on remand, Gamefly should be able to present that evidence. You didn't even have the person met. For example, in this record, do you know whether they even purchased the game? I'm sorry? Did they purchase a new game? Yes, we do know that, yes. Why didn't you just send a receipt? That's easy. Your Honor, I will say this. The restitution issue was not... It wasn't presented to the district court as a restitution issue. The defense attorney provided on the... There's no burden. You should have known that the law was that we default to fair market. So you knew that should have been the thing that you have to surmount. So it's not enough to just say that they didn't give you warning. You should know. You have the burden. You know we know we default to fair market. It's the law. Then you know that that's your burden. You got to first say that this is why this is not appropriate. That's why we go here. Your Honor, but fair market value doesn't come up unless a defendant contests what the actual victimization is. I mean, district courts routinely, routinely rely upon the assertion of the victims of what they lost. This is normal. This is common. Maybe routine is not the law. Maybe we're going to establish it. Well, Your Honor, I think it's appropriate for a district court to rely upon a victim's statement of its loss. And then if the victim challenges it, which this... Not victim, sorry. The defendant challenges it, which this defendant did sort of use the word restitution so we're not arguing plain error, but really, in fairness, never presented the district court with the standard that applies. And so all I'm suggesting is that on remand, let the district court determine whether it should be replacement value or fair market value. Let's give the district court the law and let's let the district court decide because that's a discretionary call. You've indicated that where it was challenged, and let's just assume, Mark, you're in there, it was challenged. You've indicated that where it was challenged, then fair market value becomes the presumptive standard. It becomes... Where it is challenged. Where it is challenged, it is where one begins, but if replacement cost is... I see that my time is up. If it is where the court begins, but a victim or the United States could also properly show that that doesn't actually make the victim whole, if, for example, it would take them two weeks to get the disks on GameStop.com, if that were even possible, that would be a situation where maybe replacement cost is actually what makes the victim whole. As the Eighth Circuit recognized in Frazier, if anyone loses under the MVRA, it's the defendant, not the victim. And I think this court, if it's going to remand, should just let the district court conduct the analysis that was never conducted before because the district court wasn't fairly... That argument really wasn't presented. The government would request that this court affirm the judgment of the district court. Otherwise, thank you very much, Your Honor, for your time. Thank you. Mr. Coburn, you have a few minutes. I want to start with the guidelines point. And while we all agree that issue itself is moot, we would strenuously disagree with the idea that there's an entirely separate standard here or that the loss amount calculation under the guidelines was somehow correct. The standard is the same under the guidelines that it is under the MVRA, and we presented that to the district court judge. If you look at Joint Appendix page 74, we cited to the district court guidelines commentary 2B1.1 Commentary Note 3C, which says the estimate, reasonable estimate, fine, but the estimate of loss shall be based on the fair market value of the property. Unless, if the property, if the fair market value is impractical or somehow inadequate, then and only then can you look at replacing the exact same standard using slightly different words that applies under the MVRA. We made the argument to the district court and the government simply didn't present their evidence on it. So I want to be clear that there's no real... Let me just get to what Ms. Ray's argument was, which she says that there are some times when fair market value is going to be wholly inadequate because the basic purpose of a restitution statute is to make the victim whole, and if the fair market value doesn't take into account such things as the expense and difficulty and delay that a defendant is put to in replacing the inventory. And so she says that, you know, that particularly in this kind of sale of goods situation and particularly with the retailer, the fair market value standard is deficient and basically so in a wide variety of circumstances. What do you have to say with regard to that? Well, I think that it's confusing the analysis is the problem. There are two separate types of costs that can be included in a restitution order. There's the valuation of the lost property itself, and then there are these other incidental costs. And, for example, in this case, the district court included $1,390 in mailing costs. That's not part of the fair market value. That is at least arguably includable as an incidental cost. That's analyzed separately, and there's actually circuit disagreement on when those kinds of incidental costs can be included. There's a case pending in the Supreme Court called... Even under a fair market standard. Well, no, and so I think the important point here is they're separate. So there are two different things you can include in a restitution order. There is point one, and it's under subsection A-1 of the restitution statute, where the preferred remedy is the return of the property. If that's not available, then it's the valuation of the property. And then there's subsection B-4, which lists certain incidental costs that can be included. And so are we only dealing with the first of those? Exactly. So we didn't make an objection under the incidental costs to the inclusion of the mailing costs. I will say there's a Supreme Court case pending called Lagos v. United States, L-A-G-O-S. So if those incidental costs of that nature can be proved on remand, you don't object? If they can be proved under the appropriate standard which the Supreme Court is likely to set in this pending case. And so there's a distinction between sort of immediately incidental costs, which this Court has allowed to be included, and consequential damages, things like lost profits, which this Court has said do not get included. So the Mullins case is from 1992, and I can give the Court the cite because I don't think it was mentioned in the briefing. But you're agreeing that the cost of mailing a discount in the first place before they were stolen is incongruent with incidental costs? Under this Court's current precedent, I agree with that. I am hopeful that the Supreme Court will alter that standard in the Lagos case, and if so, we can certainly deal with that on remand. But for the moment, and I think the key point here is the case before the Supreme Court that says it's going to impact this case? No, because it's under B-4. The only thing it could potentially impact in this case would be the incidentals. But the point is you're making the point that we're only dealing with A. Yeah, exactly. We're dealing with B-1, which is valuation of the property itself, which is you use fair market, you use replacement costs. Okay, we're not dealing with anything incidental or consequential in this case. It's just valuation. Exactly. And so all of the other stuff that she's suggesting, lost profits, lost goodwill, all of that stuff, it's an entirely separate analysis from fair market versus replacement costs. If they can show a direct causation of those things in a way that satisfies the case law that has been set forth under that entirely separate stream. But that's for another day. That's another day, another case. What we're dealing with, they've never asserted any of those kinds of things, except for the mailing costs, which were included. So entirely separate analysis. So we're just asking the court to keep them separate as they are. Ms. Ray is also saying this case was just really poorly presented in the district court, and the district court shouldn't be hammered for precedents that were never brought before it and evidence that was never put forward, and that it's taken on a much more sophisticated and refined argument on appeal than it did prior to the district court. So are we being unfair to the district court, even if it's not full-blown, plain error review? Well, I think the point of the appellate process is to sharpen the arguments, and so we certainly hope we've done that. I think we did plenty in the district court to preserve this. We presented the court with the governing guideline. In retrospect, it would have been nice to do more on restitution and cite these cases independently, sure. But I think we've clearly preserved the issue, clearly argued the issue. And more importantly, the rule that the district court applied, even if we were on plain error on the first part of the argument, which they're not contending we are, the rule here is clearly established, and the district court applied a contrary rule. So even hypothetically, I'm not saying we would win. But no, I'm not asking you to say anything to hammer Judge Whitney. Take it easy on him, but send it back and let him try again. Thank you. Thank you, Ms. Calvin.
judges: Roger L. Gregory, J. Harvie Wilkinson III, G. Steven Agee